**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Lauren E. Schwartzreich
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IAN MATHESON and SEAN GALLAGHER, on behalf of themselves and all others similarly situated,**<br><br>                    **Plaintiffs,**<br><br>           **-against-**<br><br>**THE GLAZIER GROUP, INC.; T-BONE RESTAURANT, LLC a/k/a STRIP HOUSE NEW YORK; PETER H. GLAZIER; PENNY GLAZIER; and MATHEW GLAZIER,**<br><br>                    **Defendants.** | **No. 09 Civ. 4214 (DAB)** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

    I.    Procedural History .......................................................................................1

    II.   Discovery ......................................................................................................2

    III.  Plaintiffs' Factual Allegations ...................................................................2

    IV.  Settlement Negotiations ...............................................................................3

SUMMARY OF THE SETTLEMENT TERMS ......................................................... 3

    I.    The Settlement Fund ....................................................................................3

    II.   Release ..........................................................................................................4

    III.   Eligible Employees ......................................................................................4

    IV.  Allocation Formula .....................................................................................4

    V.   Attorneys' Fees and Litigation Costs.........................................................4

    VI.  Service Awards .............................................................................................5

    VII. Settlement Claims Administrator.................................................................6

CLASS ACTION SETTLEMENT PROCEDURE ...................................................... 6

ARGUMENT ................................................................................................................ 7

    I.    Preliminary Approval of the Settlement Is Appropriate ............................. 7

          A.   The Settlement is Fair, Reasonable, and Adequate............................... 9

               1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ......................................................................10

               2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .............. 11

               3.    Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).....................................11

4.   Plaintiffs Would Face Real Risks if the Case Proceeded
(*Grinnell* Factors 4 and 5)...............................................................12

5.   Establishing a Class and Maintaining it Through Trial Would
Not Be Simple (*Grinnell* Factor 6) ................................................13

6.   Defendants' Ability to Withstand a Greater Judgment Is Not Assured
(*Grinnell* Factor 7) .........................................................................14

7.   The Settlement Fund is Substantial in Light of the Possible Recovery
and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...............15

II.   Conditional Certification of the Rule 23 Class Is Appropriate........................................16

A.   Numerosity.............................................................................................. 17

B.   Commonality............................................................................................ 18

C.   Typicality................................................................................................. 18

D.   Adequacy of the Named Plaintiffs ......................................................... 19

E.   Certification Is Proper Under Rule 23(b)(3) ......................................... 20

1.   Common Questions Predominate ..................................................20

2.   A Class Action Is a Superior Mechanism.....................................21

III.   Plaintiffs' Counsel Should Be Appointed as Class Counsel............................................22

IV.   The Proposed Class Notice Is Appropriate.....................................................................23

V.   Plaintiffs Will Seek Approval of the FLSA Settlement..................................................25

CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)..................................................................................16, 20, 21

*Ansoumana v. Gristede's Operating Corp.,*
201 F.R.D. 81 (S.D.N.Y. 2001) ................................................................25

*Cagan v. Anchor Sav. Bank FSB,*
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)...............................15

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)....................................................................9, 10, 15

*Clark v. Ecolab, Inc.,*
Nos. 07 Civ. 8623, 04 Civ. 4488 & 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
11, 2010) ................................................................................................4, 22

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995).......................................................................17

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001)........................................................................9, 10

*Danieli v. IBM Corp.,*
No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ...........................8

*deMunecas v. Bold Food, LLC,*
No. 09 Civ. 0440, 2010 WL 2399345 (S.D.N.Y Apr. 19, 2010)...................... passim

*Dziennik v. Sealift, Inc.,*
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)...........................19

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005).................................................... passim

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982)...................................................................................18

*Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ....................................................16

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000).......................................................................10

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968)..................................................................................21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................8, 16, 22

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................10, 11, 13

*In re BankAmerica Corp. Sec. Litig.*,
210 F.R.D. 694 (E.D. Mo. 2002) ..............................................................9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
Nos. 05 Civ. 10240, et al., 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................9

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).....................................................................17

*In re Ira Haupt & Co.*,
304 F. Supp. 917 (S.D.N.Y. 1969)..........................................................12

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................12

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .........................9

*In re Traffic Exec. Ass'n*,
627 F.2d 631 (2d Cir. 1980)....................................................................8

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)............................................................20, 21, 22

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004).....................................................................11

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) .............................................................18

*Maley v. Dale Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................11

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)....................................................................18

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995).....................................................................8

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ......................................................................21

*McKenna v. Champion Intern. Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ........................................................................25

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .................................... passim

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
    471 F.3d 24 (2d Cir. 2006)..............................................................................20

*O'Dell v. AMF Bowling Ctrs., Inc.*,
    No. 09 Civ. 759, 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009)............................................23

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..........................................................................15

*Prasker v. Asia Five Eight LLC*,
    No. 08 Civ. 5811, 2009 WL 6583143 (S.D.N.Y. Sept. 22, 2009) ........................12, 18, 19, 21

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................17

*Reyes v. Buddha-Bar NYC*,
    No. 08 Civ. 02494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009)................................ passim

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...........................................................................19

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)...........................................................................20

*Stefaniak v. HSBC Bank USA*,
    No. 05 Civ. 720, 2008 WL 7630102, (W.D.N.Y. June 28, 2008) ...........................................4

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).........................................19

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..........................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................8, 9

*Westerfield v. Wash. Mut. Bank*,
    No. 06 Civ. 2817, 2009 WL 6490084 (E.D.N.Y. June 26, 2009)..........................................23

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008)........................................................................9


**STATUTES**

Fed. R. Civ. P. 23 ................................................................................................ passim

Fed. R. Civ. P. 54 (d)(2)...........................................................................................5


**OTHER AUTHORITIES**

Amy Cortese, *Putting Capital at the Top of the Menu*, N.Y. Times, Feb. 1, 2009 .......................14

Frank Bruni, *Restaurants Stop Playing Hard to Get*, N.Y. Times, Feb. 4, 2009 ..........................14

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)...................6, 8, 16

## INTRODUCTION

Subject to Court approval, Plaintiffs Ian Matheson and Sean Gallagher (collectively, "Plaintiffs") and Defendants The Glazier Group, Inc.; T-Bone Restaurant, LLC a/k/a Strip House New York; Peter H. Glazier; Penny Glazier; and Mathew Glazier (collectively, "Defendants") (together with Plaintiffs, "Parties") have settled this restaurant wage and hour case for $495,000. The proposed settlement resolves Plaintiffs' claims and satisfies all of the criteria for preliminary settlement approval.

Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit C to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Swartz Decl.");[1] (2) conditionally certify the settlement class under Federal Rule of Civil Procedure 23(b)(3); (3) appoint Outten & Golden LLP and Fitapelli & Schaffer, LLP as Class Counsel ("Class Counsel"); and (4) approve the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Notice"), attached as Exhibit A to the Settlement Agreement, and direct its distribution.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Procedural History

Plaintiffs are former tipped hourly service workers who worked at T-Bone Restaurant, LLC, a/k/a/Strip House ("Strip House") in New York City.  Strip House is owned and operated by The Glazier Group, Inc., along with individual Defendants Peter H. Glazier, Penny Glazier, and Mathew Glazier.

---

[1]        Unless otherwise indicated, all exhibits are attached to the Swartz Decl.

On April 29, 2009, Plaintiff Ian Matheson commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. 216(b), bringing claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Swartz Decl. ¶ 12.) On May 21, 2010, Plaintiff Matheson filed an Amended Class Action Complaint, adding Sean Gallagher as a named plaintiff and adding a claim for liquidated damages. (*Id.* ¶ 13.)

## II.   **Discovery**

The Parties engaged in substantial informal discovery before agreeing to resolve this case. Plaintiffs' counsel interviewed Plaintiffs regarding their hours worked, their wages, the duties of individuals who received tips, Defendants' tip distribution policies, Defendants' uniform policies, and other relevant information. (*Id.* ¶ 15.) Plaintiffs' counsel also interviewed managers who had worked for Defendants who corroborated Plaintiffs' accounts of Defendants' wage and hour policies. (*Id.* ¶ 16.) Defendants produced a sampling of electronic payroll, tip, and time records for the period from 2003 to 2009, as well as tip records, time sheets, work schedules, job postings, and employee manuals. (*Id.* ¶ 14.) From this data, Plaintiffs conducted detailed damages calculations. (*Id.* ¶ 14.) After an unsuccessful attempt at mediation, Plaintiffs propounded interrogatories and document requests and noticed and prepared to take two 30(b)(6) depositions. (*Id.* ¶ 20.) Defendants noticed Plaintiff Matheson's deposition. (*Id.* ¶ 19.) The Parties also engaged in extensive letter briefing on Defendants' proposed motion to dismiss, which the Court resolved in Plaintiffs' favor by Order dated May 11, 2010. (*Id.* ¶ 21.)

## III.   **Plaintiffs' Factual Allegations**

Plaintiffs allege that Defendants violated the FLSA and NYLL by: (1) failing to pay Plaintiffs and Class Members properly for hours that they worked over 40 in a workweek; (2)

unlawfully distributing a portion of tips to tip-ineligible workers and to the house; (3) failing to compensate Plaintiffs and Class Members at the proper minimum wage rate; (4) failing to pay for uniform-related expenses; and (5) failing to pay Plaintiffs and Class Members call-in pay when they were sent home early from their scheduled shift.  (Ex. A (First Am. Compl.).)

### IV.    Settlement Negotiations

Instead of spending significant resources litigating this case, the Parties agreed to participate in private, non-binding mediation to attempt to reach a resolution.  They hired Carol Wittenberg of JAMS, a well-known mediator.  (Swartz Decl. ¶ 22.)  After the mediation, Defendants made a class-wide settlement offer and Plaintiffs countered.  (*Id.* ¶ 23.)  Defendants responded with an offer that, as Plaintiffs informed Defendants, was very close to one that Plaintiff would accept on behalf of the class.  (*Id.* ¶ 23.)  In February 2010, Defendants substituted counsel and withdrew their class-wide settlement offer.  (*Id.* ¶ 24.)  Defendants then offered Plaintiff Matheson significant sums in an attempt to "pick him off," by inducing him to settle the matter on an individual basis and abandon his class allegations. He rejected these attempts.  (*Id.* ¶ 24.)  After beginning formal discovery, the Parties agreed to settle this matter on a class-wide basis and entered into the Settlement Agreement.  (*Id.* ¶¶ 25-26.)

### SUMMARY OF THE SETTLEMENT TERMS

### I.    The Settlement Fund

The Settlement Agreement creates a fund of $495,000 ("the Fund").  (Ex. C (Settlement Agreement) ¶ 3.1(A).)  The Fund covers attorneys' fees and costs, Class Members' awards, interest, service payments to Plaintiffs, and any fees and/or taxes associated with investing and liquidating the Fund.  (*Id.* ¶ 3.1(A).)  Defendants shall deposit the Fund into an escrow account over an approximately 16-month period, with the last payment to be made on or before February

29, 2012.  (*Id.* ¶ 3.1(B).)  Any interest accrued from the escrow account will become part of the

Fund.  (*Id.* ¶ 3.1(C).)  None of the Fund will revert to Defendants.  (*Id.* ¶ 3.4(F).)

## II.   **Release**

The Settlement Agreement provides that every Class Member who does not timely opt

out of the settlement will release Defendants from all NYLL wage and hour claims that were

asserted in the lawsuit.  (*Id.* ¶ 3.6(A)(1).)  Class Members who do not opt out and who sign their

settlement checks will be deemed also to have provided their written consents to join the FLSA

collective and to have released their FLSA claims.  (*Id.* ¶¶ 2.6; 3.6(A)(2).)

## III.   **Eligible Employees**

The Class consists of all individuals who worked at Strip House as tipped hourly service

workers from April 29, 2003 through the date on which this Court grants preliminary approval.

(*Id.* ¶ 2.2.)  Those who do not opt out of the settlement are eligible for their proportional share of

the Fund.  (*Id.* ¶¶ 2.5; 3.4(A).)

## IV.   **Allocation Formula**

Each Class Member will receive a proportional share of the Fund based on the number of

weeks he or she worked at Strip House as a tipped hourly service worker between April 29, 2003

and the date of any Order Granting Preliminary Approval.  (*Id.* ¶¶ 1.7; 3.4(B).)

## V.   **Attorneys' Fees and Litigation Costs**

Plaintiffs' counsel will apply for one-third of the Fund, or $165,000, as attorneys' fees.[2]

(*Id.* ¶ 3.2(A).)  Plaintiffs' counsel will also seek reimbursement of their actual out-of-pocket

---

[2]      This is a typical fee award in the Second Circuit.  *Clark v. Ecolab, Inc.*, Nos. 07 Civ.
8623, 04 Civ. 4488 & 06 Civ. 5672, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (finding
class counsel's request for one-third of the settlement fund "reasonable and 'consistent with the
norms of class litigation in this circuit'") (citing *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05
Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Stefaniak v. HSBC Bank USA,*

expenses from the Fund of no more than $15,000.  (*Id*.)  The Court need not rule on fees and

costs now.  Plaintiffs' counsel will file a formal motion for approval of fees and costs along with

their motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h) and 54(d)(2).

## VI.   <u>Service Awards</u>

In addition to their individualized awards under the allocation formula, and subject to

Court approval, Plaintiff Matheson will seek an additional payment of $45,000 and Plaintiff

Gallagher will seek an additional payment of $5,000 in recognition of the services they rendered

to the class ("Service Awards").  (Ex. C (Settlement Agreement) ¶ 3.3.)  Plaintiff Matheson

assisted Plaintiffs' counsel by providing facts relevant to the claims asserted in this case prior to

the filing of the complaint and as the case progressed, providing counsel with relevant

documents in his possession, providing a declaration, informing putative Class Members of the

lawsuit and encouraging them to assist Plaintiffs' counsel, identifying potential witnesses, and

helping counsel to prepare for the mediation. (Swartz Decl. ¶ 17.)  Plaintiff Gallagher also

provided Plaintiffs' counsel with facts relevant to the claims asserted in this case during his

involvement as a named plaintiff and otherwise assisted counsel.  (*Id.* ¶ 18.)

In addition, Plaintiff Matheson rejected substantial individual settlement offers in order to

be able to pursue a class-wide recovery.  (*Id.* ¶ 24.)  Defendants first offered Matheson $30,000

to settle the case.  (*Id.* ¶ 24.)  When he rejected this offer, Defendants offered him $62,500,

which he rejected as well.  (*Id.* ¶ 24.)  The Service Award amount sought by Matheson reflects

not only the effort he put into prosecuting the case, but also the extraordinary personal sacrifice

he made by rejecting settlement offers far higher than the value of his individual claims in order

to obtain a recovery for other workers.  The $45,000 service award he seeks is far less than the

No. 05 Civ. 720, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (a fee award of "33% of
the Settlement Fund is typical in class action settlements in the Second Circuit").

$62,500 settlement that he selflessly turned down.  Plaintiffs will formally move for Court approval of the Service Awards simultaneously with their motion for final approval of the Settlement.  Defendants have reserved the right to object to any application for a Service Award in excess of $5,000.  (Ex. C (Settlement Agreement) ¶ 3.3.)

## VII.   Settlement Claims Administrator

The Parties have agreed to retain Settlement Services, Inc. of Tallahassee, Florida, as Claims Administrator.  (Swartz Decl. ¶ 27.)  The Claims Administrator will be responsible for the mailing of Notice to Class Members, calculating each Class Member's individual settlement award and tax withholdings, cutting the settlement checks, and mailing them to Class Members.  (Ex. C (Settlement Agreement) ¶¶ 1.2; 2.1; 3.1(F); 3.4.)

## CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements, which include three distinct steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;

2.   Dissemination of mailed and/or published notice of settlement to all affected Class Members; and

3.   A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

See Fed. R. Civ. P. 23(e); see also  Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), )§§ 11.22, et seq. (4th ed. 2002).  This process safeguards Class Members' procedural due process rights and enables the court to fulfill its role as the guardian of class interests.  With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class,

appointing Plaintiffs' Counsel as Class Counsel, and approving the Proposed Notice and authorizing the Claims Administrator to send it.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.   The Proposed Notice will be mailed to Class Members within 15 days after the Order Granting Preliminary Approval.  (Ex. C (Settlement Agreement) ¶¶ 2.4(A), (B).)

2.   Class Members will have 30 days after the date the Proposed Notice is mailed to opt out of the settlement ("Opt-Out Period").  (*Id.* ¶ 2.5(A).)

3.   Class Members will also have 30 days after the last date the Proposed Notice is mailed to object to the proposed settlement.  (*Id.* ¶ 2.7(A).)

4.   Plaintiffs will file a Motion for Final Approval of Settlement no later than 15 calendar days before the fairness hearing.  (*Id.* ¶ 2.8.)

5.   After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue an Order Granting Final Approval.  If no party seeks a rehearing, reconsideration, or appeal of the Court's Final Order and Judgment, the effective date of the settlement will be the later of 31 days after the Court enters its Order Granting Final Approval and 15 days after Defendants' last settlement payment is due.  ("Effective Date").  (*Id.* ¶ 1.10; 2.9.)

6.   If a party seeks a rehearing, reconsideration, or appeal of the Court's Final Order and Judgment, the Effective Date of Settlement shall be the later of  15 days after the last settlement payment is due or the day after all avenues of rehearing, reconsideration, and appellate have been exhausted and no further rehearing reconsideration or appellate review is permitted, and the time for seeking such review has expired, and the Order Granting Final Approval and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.  (*Id.* ¶ 1.10.)

7.   The Claims Administrator will disburse settlement awards to Class Members, Plaintiffs' Counsel's attorneys' fees, costs and expenses, and Plaintiffs' Service Awards within 30 days of Defendants' final payment in full under the payment schedule set forth in Section 3.1(B) of the Settlement Agreement. (*Id.* ¶ 3.1(F).)

## <u>ARGUMENT</u>

I.   <u>**Preliminary Approval of the Settlement Is Appropriate.**</u>

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.")  The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25.  The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *see Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *see also deMunecas v. Bold Food, LLC*, No. 09 Civ. 0440, 2010 WL 2399345, at *1 (S.D.N.Y Apr. 19, 2010) (granting preliminary approval where settlement was "within the range of possible settlement approval"); *Danieli v. IBM Corp.*, No. 08 Civ. 3688, 2009 WL 6583144, at *4 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)) (internal quotation marks omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, et al., 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); s*ee also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

This first step in the settlement process simply allows notice to issue to the class and for Class Members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### A.     The Settlement is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated*

*on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Although

the Court need not evaluate the *Grinnell* factors in order to conduct its initial evaluation of the

settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge

the settlement.

The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery

completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the

risks of maintaining the class action through the trial; (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  All of the

*Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor

of preliminary approval.

**1.   <u>Litigation Through Trial Would be Complex, Costly, and Long (Grinnell
Factor 1).</u>**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to

avoid significant expense and delay and ensure a speedy, risk-free recovery for the class.  "Most

class actions are inherently complex and settlement avoids the costs, delays and multitude of

other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F.

Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78.  This case is no

exception, with over 100 putative Class Members who worked in several different positions and

multiple claims under both federal and state law.

Although there has been significant informal discovery, additional discovery would be

required to establish liability and damages, including depositions of Plaintiffs, Class Members,

and Defendants' managers and owners.  A fact-intensive trial would be necessary.  Preparing and

putting on evidence at such a trial would consume tremendous amounts of time and resources

and demand substantial judicial resources.  A trial on damages, even on a representative basis,

would be costly and would further defer closure.  Any judgment would likely be appealed,

thereby extending the duration of the litigation.  This settlement, on the other hand, makes

monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the

first *Grinnell* factor weighs in favor of preliminary approval.

### 2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy."  *Maley v. Dale Global Techs.*

*Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  Although notice of the settlement has not yet

issued to the class, both of the named Plaintiffs have expressed their approval of the settlement

terms by signing the Settlement Agreement.  After notice issues and Class Members have had an

opportunity to weigh in, the Court can more fully analyze this factor.

### 3.   Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).

The Parties have completed enough discovery to recommend settlement.  The pertinent

question is "whether counsel had an adequate appreciation of the merits of the case before

negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting

*In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted).

"[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not

designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the

prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176

(quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal

quotation marks omitted).  The Parties' discovery here meets this standard.  As discussed above,

Plaintiffs obtained copious amounts of data, including payroll, time entries, tip data, tip sheets,

employee manuals, and other relevant information.  (Swartz Decl. ¶ 14.)  In addition, Plaintiffs

interviewed other workers, including managers, and engaged in mediation with Defendants

during which they advocated their positions, shared additional information and data, and engaged

in a vigorous exchange regarding their respective claims and defenses.  (*Id.* ¶¶ 15-16, 23.)

Plaintiffs also conducted detailed damages calculations based on extensive data, giving Plaintiffs

a clear appreciation of the value of the case.  (*See id.* ¶ 14.)

Based on these circumstances, the Parties were well-equipped to evaluate the strengths

and weaknesses of the case.  *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in

relatively early stages of discovery" where parties had exchanged extensive information

pertaining to the identities of class members and to Defendant's time and pay practices and

where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also*

*deMunecas*, 2010 WL 2399345, at *1; *McMahon v. Olivier Cheng Catering & Events, LLC*, No.

08 Civ. 8713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010); *Prasker v. Asia Five Eight*

*LLC*, No. 08 Civ. 5811, 2009 WL 6583143, at *1 (S.D.N.Y. Sept. 22, 2009).  This factor also

weighs in favor of preliminary approval.

### 4.  <u>Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).</u>

Although Plaintiffs' case is strong, it is not without risk.  "Litigation inherently involves

risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "if

settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of

the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v.*

*Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted).

A trial on the merits would involve significant risk as to both liability and damages, particularly with respect to the minimum wage and tip misappropriation claims because of their fact-intensive nature. First, Plaintiffs may have difficulty showing that the coffee preparers and glass polishers with whom Plaintiffs and Class Members were required to share their tips were ineligible to receive tips under the FLSA and NYLL. This inquiry would require extensive testimony by both Parties regarding the duties performed by the allegedly tip-ineligible employees. Second, the Parties would also dispute whether Defendants' tip pooling policy was voluntary or whether it was mandated by Defendants. This inquiry would also be highly fact intensive and would require extensive testimony by both Parties.

While Plaintiffs believe that they could ultimately establish Defendants' liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor therefore weighs in favor of preliminary approval.

### 5. <u>Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6).</u>

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the class and such a determination would likely be reached only after exhaustive briefing by both Parties. Defendants may argue that individual questions preclude class certification, including whether the relevant policies were uniform throughout the

relevant time period and whether the duties of allegedly tip-ineligible workers varied.  Should

the Court certify the class, Defendants would likely challenge certification and move to

decertify, requiring another round of briefing.  Defendants could also seek permission to file an

interlocutory appeal under Federal Rule of Civil Procedure 23(f).  Risk, expense, and delay

permeate such a process.  Settlement eliminates this risk, expense, and delay.  This factor

therefore favors preliminary approval as well.

### 6.  Defendants' Ability to Withstand a Greater Judgment Is Not Assured (*Grinnell* Factor 7).

Given the current financial crisis and its impact on the New York restaurant industry,[3] it

is not certain that Defendants could withstand a greater judgment.  Even if they could, a

"defendant's ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank*

*Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  Here, the Settlement Agreement eliminates the risk

of collection by requiring Defendants to pay the Fund into escrow over a 16-month period. (Ex.

C (Settlement Agreement) ¶ 3.1(B).)  Should the Court grant preliminary approval, Defendants

must provide Plaintiffs with a Confession of Judgment for the entire amount of the settlement

fund, less amounts already deposited into escrow, within fifteen days of any order granting

preliminary approval.  (*Id.* ¶ 3.1(D).)  Moreover, if Defendants fail to make timely payments as

required under the Settlement, Plaintiffs may enforce the Confession of Judgment.  If Defendants

fail to make timely payments as required under the Settlement and fail to cure any payment

default within thirty days after written notice of the default, the Settlement Agreement becomes

---

[3]     *See* Frank Bruni, *Restaurants Stop Playing Hard to Get*, N.Y. Times, Feb. 4, 2009, at D1,
available at: http://www.nytimes.com/2009/02/04/dining/04note.html; Amy Cortese, *Putting
Capital at the Top of the Menu*, N.Y. Times, Feb. 1, 2009, at BU14, available at:
http://www.nytimes.com/2009/02/01/business/01sqft.html?emc=eta1.

null and void, provided that Plaintiffs do not seek to enforce the Confession of Judgment or fail to collect on it.  (*Id.*)  Accordingly, this factor also favors preliminary approval.

### 7.  The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The $495,000 settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.  Each Class Member will receive a payment based upon his or her number of weeks of employment with Defendants.  (*Id.* ¶ 3.4(B).)  In Plaintiffs' counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims and survived an appeal.  (Swartz Decl. ¶ 28.)

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464

F.2d 689, 693 (2d Cir. 1972)).

Moreover, when settlement assures immediate payment of substantial amounts to class

members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount

years down the road,'" settlement is reasonable under this factor.  *See Gilliam,* 2008 WL 782596,

at *5 (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL

1087261, at *5 (S.D.N.Y. May 14, 2004)).

## II.     <u>Conditional Certification of the Rule 23 Class Is Appropriate.</u>

Plaintiffs respectfully request that the Court conditionally certify the following Federal

Rule of Civil Procedure 23 class for purposes of effectuating the settlement:

> All individuals who work or worked at Strip House New York Restaurant as
> tipped hourly service workers from April 29, 2003 through the date of the Order
> Granting Preliminary Approval.

The proposed settlement class satisfies Rule 23(a)'s requirements of numerosity,

commonality, typicality, and adequacy of representation, and at least one of the subsections of

Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon*, 150 F.3d at

1019.  Accordingly, Plaintiffs request that the Court conditionally certify the settlement class and

appoint Plaintiffs' counsel as Class Counsel.

As discussed below, all of the certification requirements for settlement purposes are met,

and Defendants consent to conditional certification.  (Ex. C (Settlement Agreement) ¶ 2.2.)  *See*

*Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action

may be maintained as a class action, the parties may stipulate that it be maintained as a class

action for the purpose of settlement only").  Conditional settlement approval, class certification,

and appointment of Class Counsel have practical purposes, including avoiding the costs of

litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

Under Rule 23(a), a class action may be maintained if all of the requirements of Rule 23(a) are met, as well as one of the requirements of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A.*, 126 F.3d at 377).

A.     **Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily satisfy the numerosity requirement – there are approximately 186 Class Members. (Swartz Decl. ¶ 29.)

**B.**   **Commonality**

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank*, 228 F.R.D. at 181. There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involves common factual and legal issues: whether Defendants failed to pay proper overtime wages, misappropriated tips by unlawfully distributing a portion to non-tip eligible workers and to themselves, improperly took a tip credit, failed to pay call-in pay, and failed to reimburse workers for uniform-related expenses. These alleged wage and hour violations – involving common operative facts stemming from corporate policies that affected Class Members in the same way – are sufficient to meet Rule 23(a)'s commonality factor. *See deMunecas*, 2010 WL 2399345, at *1 (commonality satisfied where restaurant workers raised wage and hour claims similar to those alleged here); *Prasker*, 2009 WL 6583143, at *1 (same).

**C.**   **Typicality**

Typicality is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Grp.*, 960 F.2d

285, 291 (2d Cir. 1992)) (internal quotation marks omitted).  "Minor variations in the fact

patterns underlying individual claims" do not defeat typicality when the defendant directs "the

same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931,

936-37 (2d Cir. 1993).  Here, Plaintiffs' claims arise from the same factual and legal

circumstances that form the bases of Class Members' claims, namely, that Plaintiffs and Class

Members were required to share their tips with tip-ineligible employees and the house, were not

paid proper minimum wages and overtime, were not paid for at least three hours of work when

they were sent home early from a shift, and were not reimbursed for uniform-related expenses,

and that these policies and practices violated Section 203(m) of the FLSA and New York Labor

Law.  *See deMunecas*, 2010 WL 2399345, at *2 (typicality satisfied where plaintiffs claims arose

from the same factual and legal circumstances that formed the bases of class members' claims);

*Prasker*, 2009 WL 6583143, at *1-2 (typicality satisfied where plaintiffs and class members

suffered same injury from defendants' failure to pay proper minimum and overtime wages,

spread of hours pay, all of the tips they earned, and reimbursement for uniform expenses).

### D.    Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure

that the class representatives will have an interest in vigorously pursuing the claims of the class,

and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent.*

*Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks

omitted); *see also McMahon*, 2010 WL 2399328, at *2.  "[O]nly a conflict that goes to the very

subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v.*

19

*Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting

*Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)) (internal quotation marks

omitted).  There is no evidence that Plaintiffs' and Class Members' interests are at odds.  *See*

*deMunecas*, 2010 WL 2399345, at *2 (finding adequacy where Plaintiffs interests were not at

odds with those of class members); *McMahon,* 2010 WL 2399328, at *2 (same); *Reyes v.*

*Buddha-Bar NYC*, No. 08 Civ. 02494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009)

(same).

      **E.**    **Certification Is Proper Under Rule 23(b)(3).**

      Rule 23(b)(3) requires that the common questions of law or fact "predominate over any

questions affecting only individual members and that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

This inquiry examines "whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a

long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy &*

*Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

      **1.**  **Common Questions Predominate.**

      Predominance requires that "the issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole, . . . predominate over those issues that are

subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

124, 136 (2d Cir. 2001), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re*

*Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006) (quoting *Rutstein v. Avis Rent-A-*

*Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)) (internal quotation marks omitted).  The

essential inquiry is whether "liability can be determined on a class-wide basis, even when there

are some individualized damage issues."  *In re Visa Check*, 280 F.3d at 139.  Where plaintiffs are

"unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all Class Members were subjected to the same wage and hour policies of improper distribution of tips to tip-ineligible workers, failure to reimburse uniform-related expenses, and failure to pay show-up pay. They are also unified by a common legal theory – that these wage and hour policies violated New York law. These common issues predominate over any issues affecting only individual Class Members. *See deMunecas*, 2010 WL 2399345, at *1 (common issues predominate in restaurant case alleging wage and hour claims similar to those alleged here); *Prasker*, 2009 WL 6583143, at *2 (same); *Reyes*, 2009 WL 5841177, at *3 (same). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases). Plaintiffs therefore satisfy Rule 23(b)(3).

## 2. A Class Action Is a Superior Mechanism.

Rule 23(b)(3)'s second part analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual Class Members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

---

[4]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually.  *Clark*, 2010 WL 1948198, at *4; *deMunecas*, 2010 WL 2399345, at *2; *McMahon*, 2010 WL 2399328, at *3; *Reyes*, 2009 WL 5841177, at *3. Here, Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions.  Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction, at the Strip House restaurant in Manhattan. Employing the class device here will achieve economies of scale for putative Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications.  *See Hanlon*, 150 F.3d at 1023 (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also deMunecas*, 2010 WL 2399345, at *2 (class adjudication would conserve judicial resources and increase efficiency for class members in restaurant case alleging same wage and hour claims as alleged here); *McMahon*, 2010 WL 2399328, at *3 (class mechanism would increase efficiency, particularly for catering company employee class members who lacked resources to bring their claims individually).

### III.   Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Outten & Golden LLP and Fitapelli & Schaffer, LLP should be appointed as Class Counsel.  Rule 23(g), which governs the appointment of class counsel for a certified class, sets forth four criteria courts must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's

---

settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check*, 280 F.3d at 140 (internal quotation omitted).

experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C)(i).

Plaintiffs' Counsel meet all relevant criteria. They did substantial work identifying, investigating, prosecuting, and settling the claims; have substantial experience prosecuting and settling wage and hour class actions; are well-versed in wage and hour and class action law; and are well-qualified to represent the interests of the class. (Swartz Decl. ¶¶ 10-11.) Courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in wage and hour class and collective actions. *See, e.g.*, *deMunecas*, 2010 WL 2399345, at *2 (noting that "Courts have repeatedly found O & G to be adequate class counsel in employment law class actions"); *McMahon*, 2010 WL 2399328, at *6 ("Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar"); *O'Dell v. AMF Bowling Ctrs., Inc.*, No. 09 Civ. 759, 2009 WL 6583142, at *2 (S.D.N.Y. Sept. 18, 2009) (appointing Outten & Golden LLP and Fitapelli & Schaffer, LLP as class counsel, finding that they "are experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions"); *Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817, 2009 WL 6490084, at *3 (E.D.N.Y. June 26, 2009) ("O&G's lawyers have substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law").

## IV.   **The Proposed Class Notice Is Appropriate.**

The content of the Proposed Notice, which is attached to the Settlement Agreement as Exhibit A, fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The Proposed Notice here satisfies each of these requirements.  It also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement.  This information is adequate to put Class Members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B). Courts in this district have approved class notices that are very similar to the one proposed by Plaintiffs.  *See, e.g., deMunecas*, 2010 WL 2399345, at *3; *McMahon*, 2010 WL 2399328, at *6; *Reyes*, 2009 WL 5841177, at *4.

The Settlement Agreement provides that the Claims Administrator will mail the Proposed Notice to the last known address of each Class Member within fifteen days of the Court's preliminary approval order.  (Ex. C (Settlement Agreement) ¶ 2.4(B).)  The Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom notices are returned as undeliverable.  (*Id.* ¶¶ 2.4(B), 2.5(A).)  Class Members will have thirty days to opt out of or object to the settlement.  (*Id.* ¶ 2.5(A); 2.7(A).)  Within thirty days of Defendants' final settlement payment, barring any rehearing, reconsideration, or appellate review, the Claims Administrator will mail Class Members their payments.  (*Id.* ¶ 3.1(F).)

### V.        **Plaintiffs Will Seek Approval of the FLSA Settlement.**

Plaintiffs will seek approval of the settlement of the FLSA claims separately from the Rule 23 claims.  FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation, unlike the procedure under Rule 23.  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]").  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see McMahon*, 2010 WL 2399328, at *6 ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.").  Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement.  When Plaintiffs file their Motion for Final Approval of the Settlement, they will seek approval of the FLSA settlement.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the settlement, conditionally certify the settlement class, appoint Plaintiffs' counsel as Class Counsel, approve the Proposed Notice of Settlement, and enter the Proposed Order.

Dated:        November 5, 2010
              New York, New York

                         Respectfully submitted,

                         **OUTTEN & GOLDEN LLP**
                         By:

/s/ Justin M. Swartz
Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Lauren E. Schwartzreich
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Putative Class*