OUTTEN & GOLDEN LLP
Justin M. Swartz
Lauren E. Schwartzreich
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

FITAPELLI & SCHAEFER, LLP
Joseph A. Fitapelli
Brian S. Schaffer
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IAN MATHESON and SEAN GALLAGHER, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

T-BONE RESTAURANT, LLC a/k/a STRIP HOUSE NEW YORK; PETER H. GLAZIER; PENNY GLAZIER; and MATHEW GLAZIER,

Defendants.

No. 09 Civ. 4214 (DAB)

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR
CERTIFICATION OF SETTLEMENT CLASS, FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, AND APPROVAL OF FLSA SETTLEMENT,
GRANTING PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES, AND GRANTING PLAINTIFFS'
MOTION FOR CLASS REPRESENTATIVE SERVICE AWARDS

Plaintiffs Ian Matheson ("Matheson) and Sean Gallagher ("Gallagher") (together with Matheson, "Plaintiffs") are former tipped hourly service workers who worked for Defendants T-Bone Restaurant, LLC, a/k/a Strip House ("Strip House"), Peter H. Glazier, Penny Glazier, and Mathew Glazier (collectively, "Defendants").

On April 29, 2009, Matheson commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. 216(b), bringing

claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Decl. of Justin M. Swartz in Support of Pls.' Mot. for Final Approval ("Swartz Decl.") ¶ 5. On May 21, 2010, Matheson filed an Amended Class Action Complaint, adding Gallagher as a named plaintiff and adding a claim for liquidated damages. *Id.* ¶ 6. Plaintiffs alleged that Defendants violated the FLSA and NYLL by: (1) failing to pay Plaintiffs and class members properly for hours that they worked over 40 in a workweek; (2) unlawfully distributing a portion of tips to tip-ineligible workers and to the house: (3) failing to compensate Plaintiffs and class members at the proper minimum wage rate; (4) failing to pay for uniform-related expenses; and (5) failing to pay Plaintiffs and class members call-in pay when they were sent home early from their scheduled shift.

The parties engaged in substantial informal discovery before agreeing to resolve this case. *Id.* ¶ 7. Instead of spending significant resources continuing to litigate the case, the parties agreed to participate in private, non-binding mediation with Carol Wittenberg of JAMS, a well-known mediator well versed in wage and hour law, to attempt to reach a resolution. *Id.* ¶ 13. After attending a mediation session on December 3, 2009, Defendants made a class-wide settlement offer and Plaintiffs countered. *Id.* ¶ 14. Defendants responded with an offer that, as Plaintiffs informed Defendants, was very close to one that Plaintiffs would accept on behalf of the class. *Id.* In February 2010, Defendants substituted counsel and withdrew their class-wide settlement offer. *Id.* ¶ 15. Defendants then offered Matheson significant sums in an attempt to "pick him off," by inducing him to settle the matter on an individual basis and abandon his class allegations. *Id.* He rejected these attempts. *Id.* After beginning formal discovery, the parties agreed to settle this matter on a class-wide basis and entered into a settlement agreement on or around November 5, 2010. *Id.* ¶¶ 16-17.

On November 15, 2010, former Defendant The Glazier Group, Inc. ("TGG") filed a Chapter 11 petition for bankruptcy protection in the United States Bankruptcy Court, Southern District of New York. *Id.* ¶ 18. In light of TGG's bankruptcy filing, the parties agreed to voluntarily dismiss TGG from the action and to exclude TGG from the settlement agreement in order to allow the settlement approval process to proceed. *Id.* ¶ 19. After several months of negotiation over the terms of an amended settlement agreement, the parties signed the amended Joint Settlement and Release ("Amended Settlement Agreement") on or around July 19, 2011. *Id.* ¶ 20. The Amended Settlement Agreement excludes TGG from the settlement, but provides for recourse against TGG in the event that the remaining Defendants default on the settlement payments. *Id.*; Ex. A (Am. Settlement Agreement) § 3.1(E).

On September 13, 2011, the Court entered an Order preliminarily approving the settlement, conditionally certifying the settlement class, appointing Outten & Golden LLP and Fitapelli & Schaffer, LLP as Class Counsel; and authorizing the dissemination of the proposed settlement notice ("Notice"). Swartz Decl. ¶ 27; Docket No. 44. On September 28, 2011, Settlement Services, Inc. ("SSI" or "Claims Administrator") sent the Notice to class members informing them of their right to opt out of or object to the settlement and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, up to $15,000 for their out-of-pocket expenses, and service awards of $45,000 and $5,000 for the class representatives, Matheson and Gallagher, respectively. Swartz Decl. ¶¶ 32-33, Ex. C (Notice) ¶ 16.

On November 14, 2011, Plaintiffs filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and a Motion for Class Representative Service Awards ("Motion for Service Awards"). On November 28, 2011, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class

3

Case 1:09-cv-04214-DAB   Document 54   Filed 12/13/11   Page 4 of 18
Case 1:09-cv-04214-DAB   Document 51-1   Filed 11/28/11   Page 5 of 19

Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on December 13, 2011. As of that date, no class member had objected to the settlement or requested exclusion.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Awards, the supporting declarations, the oral argument presented at the December 13, 2011 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the December 13, 2011 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1.     The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes:

> All individuals who work or worked at Strip House New York Restaurant as tipped hourly service workers from April 29, 2003 through September 13, 2011.

2.     Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3.     Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 193 class members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members . . . .").

4.     The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. All class members raise common issues: whether Defendants failed

4

to pay proper overtime wages, misappropriated tips by unlawfully distributing a portion to non-tip eligible workers and to the house, failed to pay call-in pay, and failed to pay statutory uniform maintenance payments and unlawfully charged workers for required uniforms. *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (commonality satisfied where restaurant workers alleged tip misappropriation, spread of hours, and uniform claims); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *2 (S.D.N.Y. Aug. 16, 2011) (same); *Campos v. Goode*, No. 10 Civ. 0224, 2010 WL 5508100, at *1–2 (S.D.N.Y. Nov. 29, 2010) (commonality satisfied where restaurant workers alleged overtime, tip misappropriation, spread of hours, and uniform claims); *deMunecas v. Bold Food LLC*, No. 09 Civ. 440, 2010 WL 2399345, at * 1 (S.D.N.Y. Apr. 19, 2010) (same).

5. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' overtime, tip misappropriation, call-in pay, and uniform claims arose from the same factual and legal circumstances that form the bases of the class members' claims. *See Johnson*, 2011 4357376, at *5; *Reyes*, 2011 WL 4599822, at *2.

6. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that Plaintiffs' and class members' interests are at odds. *See Johnson*, 2011 4357376, at *5; *Reyes*, 2011 WL 4599822, at *2.

7. In addition, Plaintiffs' counsel, Outten & Golden LLP and Fitapelli & Schaffer, LLP, "are experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions." *O'Dell v. AMF Bowling Ctrs.,Inc.*, No. 09 Civ. 759, 2009 WL 6583142, at *2 (S.D.N.Y. Sept. 18, 2009).

8. Plaintiffs also satisfy Rule 23(b)(3). Common factual allegations – that Defendants failed to pay proper overtime wages, misappropriated tips, failed to pay call-in pay,

5

and failed to make statutory uniform payments and reimburse uniform costs – and a common legal theory – that these policies violated the NYLL – predominate over any factual or legal variations among class members. *See Johnson*, 2011 4357376, at *6; *Reyes*, 2011 WL 4599822, at *3.

9. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Johnson*, 2011 WL 4357376, at *7; *Reyes*, 2011 WL 4599822, at *3. Plaintiffs and class members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction, at the Strip House restaurant in Manhattan. Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Reyes*, 2011 WL 4599822, at *3 (class adjudication would conserve judicial resources and increase efficiency for class members in restaurant case on behalf of tipped service workers).

## APPROVAL OF THE SETTLEMENT AGREEMENT

10. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Amended Settlement Agreement.

11. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To

determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement[]" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted).

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, . . . court[s] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (quotation marks omitted); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

***Procedural Fairness***

14. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at *4; *deMunecas*, 2010 WL 3322580, at *4. The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

15. Class Counsel obtained copious amounts of data, including payroll records, time entries, tip data, tip sheets, employee manuals, and other relevant information. Swartz Decl. ¶ 7.

Class Counsel also interviewed other workers, including managers, and engaged in mediation with Defendants, during which the parties advocated their positions, shared additional information and data, and engaged in a vigorous exchange regarding their respective claims and defenses. *Id.* ¶¶ 8-9, 14.

16. The parties enlisted the services of well-known mediator Carol A. Wittenberg. *Id.* ¶ 13. These arm's-length negotiations involved counsel and a mediator well versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Johnson*, 2011 WL 4357376, at *8; *Reyes*, 2011 WL 4599822, at *4.

***Substantive Fairness***

17. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

18. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

19. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

20. The class's reaction to the settlement was positive. The Notice included an explanation of the allocation formula and an estimate of each class member's award. The Notice

also informed class members of their right to object to or exclude themselves from the settlement and explained how to do so. No class member objected to or opted out of the settlement. This favorable response demonstrates that the class approves of the settlement and supports final approval. *See Johnson*, 2011 WL 4357376, at *9; *Reyes*, 2011 WL 4599822, at *4; *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.").

21. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims. The parties' participation in a day-long mediation allowed them to further explore the claims and defenses. The third *Grinnell* factor weighs in favor of final approval.

22. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, the fact-intensive nature of Plaintiffs' tip misappropriation and other wage and hour claims presents risk. The proposed settlement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

23. The risk of obtaining class certification and maintaining it through trial is also

9

present. A contested class certification motion would likely require extensive discovery and briefing. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

24. Even if Defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)). Here, the settlement substantially reduces the risk of collection. This factor also favors final approval.

25. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor weighs in favor of final approval.

## APPROVAL OF THE FLSA SETTLEMENT

26. The Court hereby approves the FLSA settlement.

27. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not

10

implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Johnson*, 2011 WL 4357376, at *12. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23.

28.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Johnson*, 2011 WL 4357376, at *12; *Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Johnson*, 2011 WL 4357376, at *12; *Reyes*, 2011 WL 4599822, at *6.

29.     In this case, the settlement was the result of litigation and arm's-length negotiation. Swartz Decl. ¶¶ 4-20. During the litigation and at the mediation, Plaintiffs and Defendants were represented by counsel. Accordingly, the Amended Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that the settlement is fair and reasonable.

## DISSEMINATION OF NOTICE

30.     Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each class member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt out of or to object to the settlement and to appear at the fairness hearing conducted on December 13, 2011. Class members were provided with the best notice practicable under the

11

circumstances.

31.     The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

32.     The Court confirms Settlement Services, Inc. as the claims administrator.

### AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

33.     On September 13, 2011, the Court appointed Outten & Golden LLP and Fitapelli & Schaffer, LLP as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g). *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

34.     Outten & Golden LLP and Fitapelli & Schaffer, LLP have substantial experience prosecuting large-scale wage and hour class and collective actions. *See Clark v. Ecolab*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010), at *8 ("Class Counsel are experienced class action employment lawyers and have extensive experience prosecuting and settling wage and hour class actions"); *Reyes*, 2011 WL 4599822, at *7 ("[O&G attorneys] are experienced employment lawyers with good reputations among the employment law bar."); *O'Dell*, 2009 WL 6583142, at *2 (appointing O&G and F&S as class counsel, finding that they "are experienced and well-qualified employment lawyers and class action lawyers and have particular expertise in prosecuting and settling wage and hour class actions"). The work that Class Counsel has performed in litigating and settling this case demonstrates their

12

commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

35. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $165,000, which is one-third of the settlement fund.

36. The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*, 2011 WL 4599822, at *7.

37. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *see Reyes*, 2011 WL 4599822, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and the NYLL are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *Reyes*, 2011 WL 4599822, at *7; *deMunecas*, 2010 WL 3322580, at *8; *see also A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted).

38. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Reyes*, 2011 WL 4599822, at *7; *deMunecas*, 2010 WL 3322580, at *8. Where relatively small claims can only be prosecuted through aggregate litigation, and the law

13

relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at *7; *deMunecas*, 2010 WL 3322580, at *8. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Reyes*, 2011 WL 4599822, at *7; *deMunecas*, 2010 WL 3322580, at *8. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Reyes*, 2011 WL 4599822, at *7; *deMunecas*, 2010 WL 3322580, at *8; *see also Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

39. Common fund recoveries are contingent on a successful litigation outcome. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Reyes*, 2011 WL 4599822, at *8 (internal quotation marks omitted). Many individual litigants, including the class members here, "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Id.* (internal quotation marks omitted).

40. Class Counsel's request for one-third of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Reyes*, 2011 WL 4599822, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).

41. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008), does not address a common fund fee petition, it

14

supports Class Counsel's request for one-third of the fund because "reasonable, paying client[s]" typically pay one-third of their recoveries under private retainer agreements. *Reyes*, 2011 WL 4599822, at *8; *deMunecas*, 2010 WL 3322580, at *9.

42. All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), weigh in favor of the requested fee award.

43. Applying the lodestar method as a "cross check," *see id.*, the Court finds that the fee Class Counsel seek is reasonable. Courts regularly award lodestar multipliers from two to six times lodestar. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, No. 96 cv. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at *5-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130, 1991 WL 275757, at *1-2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4). Here, Class Counsel are not seeking a lodestar multiplier, as the hours they expended on the litigation result in a lodestar that is higher than the $165,000 they seek. Class Counsel's request is well within the range of reasonableness.

44. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Reyes*, 2011 WL 4599822, at *8; *deMunecas*, 2010 WL 3322580, at *10.

45. The Court also awards Class Counsel reimbursement of their litigation expenses

15

in the amount of $10,028. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including Plaintiffs' share of the mediator's fees, expert fees, consultant fees, process server charges, telephone charges, postage, transportation and working meal costs, photocopies, and electronic research, are reasonable and were incidental and necessary to the representation of the class.

46.   The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

47.   The Court finds reasonable service awards of $45,000 and $5,000 to Class Representatives Matheson and Gallagher, respectively. These amounts shall be paid from the settlement fund. Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Frank*, 228 F.R.D. at 187-88; *Reyes*, 2011 WL 4599822, at *9.

48.   Courts routinely approve similar service awards in wage and hour class and collective actions. *See, e.g., Willix v. Healthfirst,Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards in wage and hour action of $30,000, $15,000, and $7,500 to be reasonable); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (granting $40,000 and $15,000 service awards in wage and hour action, where named plaintiffs were actively involved in prosecuting the case over its five-year pendency); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) (approving service payments of $25,000 and $10,000 in wage and hour action). Here, in addition to his active involvement in the prosecution of the case,

Matheson rejected individual settlement offers of far greater sums than he stood to recover on his own claims in order to obtain a recovery for other workers. He was also the subject of media coverage about the case. Media coverage of a class action can benefit the class, and a named plaintiff's involvement in it further supports a service award. These factors constitute special circumstances justifying Matheson's $45,000 service award. *See Frank*, 228 F.R.D. at 187 (in evaluating a service award, "courts consistently focus on the existence of 'special circumstances'" (quoting *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997))).

49. The "Effective Date" of the settlement shall be the later of 15 days after Defendants make their last payment due under the Amended Settlement Agreement and either 31 days after the date of this Order, if no party appeals this Order, or if a party appeals this Order, the day after all appeals are finally resolved.

50. Within 15 days of the Effective Date, Defendants' counsel will transfer all funds in escrow to the Claims Administrator.

51. Within 30 days of the receipt of Defendants' final payment under the Amended Settlement Agreement, the Claims Administrator shall distribute the funds in the settlement account by making the following payments in the order below:

   a. Reimbursing Class Counsel for $10,028 in litigation costs and expenses;

   b. Paying Class Counsel one-third of the fund ($165,000);

   c. Paying service awards of $45,000 and $5,000 to Class Representatives Ian Matheson and Sean Gallagher, respectively;

   d. Paying the remainder of the fund to class members in accordance with the allocation plan described in the Amended Settlement Agreement.

52. The Court retains jurisdiction over this action for the purpose of enforcing the Amended Settlement Agreement and overseeing the distribution of settlement funds. The parties

shall abide by all terms of the Amended Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 13th day of December, 2011.

*Deborah A. Batts*
Honorable Deborah A. Batts
United States District Judge